**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| IMRAN KHAN, ) | |
| ) | |
| Plaintiff, ) | No. 1:23-CV-15554 |
| ) | |
| v. ) | |
| ) | Judge Edmond E. Chang |
| MOHAMED ELKASSTAWI, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

In early 2018, Mohamed ElKasstawi asked Imran Khan to join his cryptocurrency fund, zk Capital, as a partner and offered him a 30% equity stake in the fund. R. 1, Compl. ¶¶ 9–11, 16–18.[1] Khan accepted the offer and came onboard. *Id.* ¶¶ 17–18. ElKasstawi and Khan then made several joint investments in cryptocurrency startups, with Khan sending his money to ElKasstawi to invest on his behalf. *Id.* ¶¶ 20–24, 28. But when those investments were liquidated, ElKasstawi allegedly refused to give Khan his rightful portion of the shares and cryptocurrency tokens that the startups issued. *Id.* ¶¶ 94–96, 100–02. ElKasstawi also walked back his promise to give Khan 30% of the equity in zk Capital. *Id.* ¶ 67.

So Khan brought this suit against ElKasstawi, alleging breaches of contract, breach of fiduciary duty, and unjust enrichment. Compl. at 13–17.[2] ElKasstawi now

---

[1] Citations to the record are "R." followed by the docket entry number and, if needed, a page or paragraph number.

[2] The Court has diversity jurisdiction under 28 U.S.C. § 1332(a) because ElKasstawi is a citizen of the State of Washington and Khan is an Illinois citizen. Compl. ¶¶ 2–3.

moves to dismiss the Complaint, arguing that the fiduciary-duty claim fails. R. 23, Def. Mot. at 1–2. Because that argument is meritless, the motion to dismiss is denied.

## I. Background

The Court accepts all well-pleaded factual allegations in the Complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In late 2017, Mohamed ElKasstawi reached out to Imran Khan and told him that ElKasstawi was planning to form an investment fund—called zk Capital—that would invest in various cryptocurrency startups. Compl. ¶¶ 9–11. A few months later, ElKasstawi asked Khan, who was experienced at researching and evaluating cryptocurrency volatility, to join zk Capital as a partner. *Id.* ¶¶ 6, 17. ElKasstawi explained that the fund would manage outside investors' money and would also pool the partners' money to directly invest in cryptocurrency startups. *Id.* ¶ 14. Khan allegedly informed ElKasstawi that Khan would not join unless he received at least 30% equity interest in the fund. *Id.* ¶ 16. ElKasstawi agreed to those terms, so Khan accepted his offer. *Id.* ¶¶ 17–18.

Khan, ElKasstawi, and the other partners in the fund agreed that they would collectively choose investments to make and each of them would contribute capital in accordance with his stake in the investment. *Id.* ¶ 20. They also agreed that ElKasstawi was responsible for receiving and managing the collective funds and executing the investments. *Id.* ¶ 22. Once ElKasstawi received shares or cryptocurrency tokens from the startups in exchange for the investments, he was supposed to immediately distribute those shares or tokens to the other partners based on their capital

contributions. *Id.* ¶ 21.

Throughout 2018, Khan and ElKasstawi decided to invest in several startups pursuant to their investment agreement. *Id.* ¶ 28. For example, Khan contributed $66,000 for a joint investment in a venture called Nervos, entitling him to 11,088,709 tokens once the investment liquidated. *Id.* ¶ 93. Similarly, Khan put $141,774 into a joint investment in a startup called Thunder, entitling him to 7,088,700 tokens. *Id.* ¶ 99. But when the Nervos and Thunder investments both were liquidated and ElKasstawi received the tokens from the companies, he allegedly refused to give Khan his share of the tokens, despite Khan's numerous requests. *Id.* ¶¶ 94–96, 100–02.

Another promise was allegedly broken: in the summer of 2018, ElKasstawi told Khan that he no longer planned to give Khan the promised 30% equity stake in zk Capital. *Id.* ¶ 67. After this announcement, Khan and the other partners decided to part ways and dissolve the fund. *Id.* ¶¶ 70–75. As part of this dissolution, ElKasstawi agreed to repay Khan the $36,000 that Khan had spent on helping build zk Capital— money that he had spent because he thought he would be receiving a large equity stake in the fund. *Id.* ¶¶ 76–77. But to date, ElKasstawi has paid Khan only $6,000 of that amount. *Id.* ¶ 80. Finally, ElKasstawi sued Khan and the other partners in Cook County Circuit Court, alleging that they stole zk Capital's trade secrets and sabotaged the fund. *Id.* ¶ 89. The state court eventually ruled against ElKasstawi, concluding that he had no evidence that the trade secrets in question ever even existed. *Id.* ¶ 90.

Khan then filed this suit against ElKasstawi, claiming several breaches of contract, breach of fiduciary duty, and unjust enrichment. Compl. at 13–17. ElKasstawi now moves to dismiss the Complaint, arguing that Khan fails to properly state a claim for breach of fiduciary duty. Def. Mot. at 1–2. ElKasstawi also asserted in his motion that the Court should stay this case until the state court could decide a then-pending motion to enforce a settlement agreement between the parties. *Id.* But that settlement has since been approved, and the agreement's terms do not resolve the federal claims at issue here. R. 39, 11/14/2024 Minute Entry. So ElKasstawi has voluntarily withdrawn his argument that the Court should stay this case. *Id.*

## II. Legal Standard

Under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (cleaned up).[3] The Seventh Circuit has explained that this rule "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)).

---

[3]This opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (cleaned up). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678–79.

### III. Analysis

ElKasstawi's only remaining arguments are that the claim for breach of fiduciary duty should be dismissed because the statute of limitations has run and because Khan and ElKasstawi's investment agreement did not create a fiduciary relationship between them. Neither argument succeeds. Def. Mot. at 3–4.

Khan's claim for breach of fiduciary duty has a five-year statute of limitations.[4] *Havoco of Am., Ltd. v. Sumitomo Corp. of Am.*, 971 F.2d 1332, 1337 (7th Cir. 1992). Although the dissolution of a partnership typically "works to end the fiduciary relationship," the relationship lives on "for purposes of an accounting or the winding up of the partnership's affairs." *Bane v. Ferguson*, 707 F. Supp. 988, 996 (N.D. Ill. 1989).

---

[4]Because a statute of limitations defense is an affirmative defense, the proper way to analyze a dismissal motion on that ground is as a motion for judgment on the pleadings under Civil Rule 12(c). *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012) (citing *Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir. 2009)). In any event, the truth of the allegations must be assumed under that mode of analysis as well. *Hayes v. City of Chicago*, 670 F.3d 810, 813 (7th Cir. 2012).

Here, Khan and ElKasstawi ended their partnership in the fall of 2018. Compl. ¶¶ 67–72. But they agreed that "each individual would retain his interest in any pending investment, which would be distributed by the custodian of the investment when the investment(s) liquidated." *Id.* ¶ 73. So ElKasstawi still had fiduciary duties to Khan even after their partnership dissolved, because the partnership assets had not yet been distributed. In 2019 and 2020, when Khan's investments were liquidated, ElKasstawi refused to give Khan his shares and tokens. *Id.* ¶¶ 94–96, 100–02. So according to the Complaint, the fiduciary duty breaches occurred in 2019 and 2020, starting the statute of limitations clock at that time. Because Khan filed this lawsuit in November 2023, the five-year time limit on his breach of fiduciary duty claim had not yet expired, at least on the current record. The claim was timely brought.

Next, ElKasstawi contends that even if the claim was timely, it fails because he never owed a fiduciary duty to Khan. Def. Mot. at 4. That is incorrect, at least at this pleading stage. "Fiduciary duties exist as a matter of law in certain relationships including partnerships and joint ventures." *Autotech Tech. Ltd. P'ship v. Automationdirect.com*, 471 F.3d 745, 748 (7th Cir. 2006). ElKasstawi allegedly offered Khan a 30% equity stake to join zk Capital as a partner—an offer that Khan accepted. Compl. ¶¶ 17–18. So ElKasstawi and Khan were partners, and a fiduciary relationship did exist between them.

Plus, a "fiduciary relationship … may also arise as the result of special circumstances of the parties' relationship, where one party places trust in another so that the latter gains superiority and influence over the former." *Prime Leasing, Inc. v.*

6

*Kendig*, 773 N.E.2d 84, 96 (Ill. App. 2002). That test is also met here, at least without the benefit of discovery. Khan placed trust in ElKasstawi to handle and execute the operations and investments of zk Capital and entrusted ElKasstawi with large sums of his own money. Compl. ¶¶ 20–23, 29, 37. So ElKasstawi had power and control over Khan's money and over the fund, further establishing a fiduciary relationship between them. The Complaint thus properly states a breach of fiduciary duty claim.

## IV. Conclusion

ElKasstawi's motion to dismiss, R. 23, is denied. It is time to promptly start discovery. On or before December 9, 2024, the parties shall confer and file a joint status report with a proposed discovery schedule.

ENTERED:

       s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: November 25, 2024

7